IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DeArius Johnson, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No. 13 C 4121 |
| | ) |
| Kimberly Passehl, et al., | ) Judge Virginia M. Kendall |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Defendants Kimberly Passehl, Chris Yuhas, Richard L. Eartly, Martin Sovich, Todd C. Wittmayer, Thomas Hannigan, Jeff Bostjanic, Lovaai Tomeliah, and the County of Will move to dismiss Count II of Plaintiff DeArius Johnson's First Amended Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The First Amended Complaint contains five claims that stem from a strip-search that occurred while he was a detainee at the Will County Adult Detention Facility on March 22, 2013: Unnecessary and Wanton Infliction of Pain in Violation of the Eight Amendment Pursuant to 42 U.S.C. § 1983(Count I); Violation of the Equal Protection Clause Pursuant to§ 1983 (Count II); Failure to Protect (Count III); Intentional Infliction of Emotional Distress (Count IV); and Indemnification against Will County (Count V). The Defendants move to dismiss Johnson's claim for violation of the equal protection clause, arguing Johnson did not adequately state an equal protection class-of-one claim by failing to plead (1) that he was arbitrarily singled out, (2) that similarly situated comparators were treated differently; and (3) facts that would overcome the presumption of rationality granted to official conduct. Because Johnson's First Amended Complaint plausibly states a plausible claim for relief under the Equal

Protection Clause, and for the following reasons, the Defendants' Motion to Dismiss Count II is denied.

## FACTS

The Court takes the following well-pleaded allegations from the First Amended Complaint and treats them as true for purposes of this motion.

At all relevant times, Johnson was a detainee at the Will County Adult Detention Facility and Passehl, Yuhas, Eartly, Sovich, Wittmayer, Hannigan, Bostjanic, and Tomeliah (collectively the "Defendant Officers") were employees of Will County assigned to the Facility. (Dkt. 44 at ¶¶ 13 and 16). On March 22, 2013, the Defendant Officers entered Johnson's cell to conduct a strip-search of his person. (*Id.* at ¶ 16). Johnson complied with every order given by the Defendant Officers, went to the front of the cell, and prepared for the search. (*Id.* at ¶ 17). Before beginning, Eartly commanded the strip-search to take place in front of five inmates while Yuhas, who was in charge of video recording the procedure for documentation, turned the video camera off and told Eartly to "make it happen." (*Id.* at ¶¶ 18-19). Eartly, Wittmayer, and Hannigan surrounded Johnson, and in an effort to remove his handcuffs, slammed his head against his bed slab and jammed their knees into his shoulder blades. (*Id.* at ¶ 20).

Johnson asked for the reason necessitating the strip-search, to which Sovich responded by aiming his Taser at Johnson's genitals and stating, "I'll shoot you in your fucking dick bitch if you ask another question." (*Id.* at ¶ 21). At the same time, Hannigan pointed his Taser at Johnson's heart and said, "I'll fry your fucking heart coward." (*Id.*). The Defendant Officers communally laughed at these remarks, and Bostjanic replied, "Yeah, I'd love to have fried nigger for dinner tonight." (*Id.*). After Johnson removed his underwear, Wittmayer stated, "What they say about black men sure is true isn't it, look at that thing!" (*Id.* at ¶ 22). Johnson responded,

"I'm not a homosexual and I don't play homosexual games." (*Id.*). Hannigan replied, "If you want that dick of yours I'd advise you to keep removing those clothes of yours." (*Id.*). When Johnson bent over and spread his buttocks for the search, an unidentified Defendant Officer said, "Oh, my! Isn't that thing beautiful!" (*Id.* at ¶ 23).

Johnson contends the Defendant Officers conducted the strip-search in an abusive manner, and at the end of the search, an unidentified Defendant Officer slapped Johnson's buttocks. (*Id.* at ¶ 24). Johnson maintains that he was not combative, dangerous, or obstinate to the Defendant Officers at any point during the search. (*Id.* at 25). Johnson further alleges that at no time immediately prior to, during, or after the alleged incident did the Defendant Officers subject any other detainee to this manner of conduct. (*Id.* at ¶ 39).

## **LEGAL STANDARD**

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all of the well-pleaded allegations in the complaint and construes all reasonable inferences in favor of the nonmoving party. *See Killingsworth v. HSBC Bank*, 507 F.3d 614, 619 (7th Cir. 2007). To state a claim upon which relief may be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true … state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotations omitted). In analyzing whether a complaint meets this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Id.* at 678. When the factual allegations are well-pleaded, the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. *See Id.* at 679. A claim has facial plausibility when

the factual content plead in the complaint allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Id.* at 678.

## DISCUSSION

The Equal Protection Clause of the Fourteenth Amendment protects individuals from governmental discrimination. The standard equal protection case involves discrimination by race, national origin, or sex; however, the Clause also prohibits the singling out of a person for different treatment for no rational reason. *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013). Count II of Johnson's First Amended Complaint alleges a class-of-one equal protection violation. The classic class-of-one claim is illustrated when a public official, "with no conceivable basis for his action other than spite or some other improper motive … comes down hard on a hapless private citizen." *Id.* at 784; (quoting *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005)). The Defendants contend that Johnson inadequately pleaded his class-of-one claim.

Although the standard for a class-of-one equal protection claim currently is unsettled in this circuit (*see Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887 (7th Cir. 2012) (en banc) (5-5 division resulting in no controlling opinion) (cert. denied, 133 S. Ct. 654 (2012))), "the claim at a minimum would require proof that the defendants intentionally treated [the plaintiff] different from others situated similarly to [him] for no rational reason." *Williamson v. Curran*, 714 F.3d 432, 449 (7th Cir. 2013); *see also Swanson*, 719 F.3d at 783 (same); *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). Even though Johnson, in his Response brief, asserts that he was subjected to disparate treatment because of his race—a suspect classification—this Court applies the rational basis test to his class-of-one claim. *See Thayer v. Chiczewski*, 705 F.3d

237, 254 (7th Cir. 2012) (holding that rational basis test applied despite plaintiff's assertion of a violation of a fundamental right).

Class-of-one claims can be maintained on allegations of irrational or malicious application of law enforcement powers. *See, e.g., Geinosky*, 675 F.3d at 747; *Hanes v. Zurick*, 578 F.3d 491, 495 (7th Cir. 2009). Courts have, however, noted that if class-of-one claims are not defined appropriately, they might turn ordinary and inevitable mistakes by government officials into constitutional violations and federal lawsuits. One element of a proper class-of-one claim is a wrongful act that necessarily involves treatment departing from some norm or common practice. *McDonald v. Village of Winnetka*, 371 F.3d 992, 1009 (7th Cir. 2004). Courts must be cautious, because "the purpose of entertaining a 'class of one' equal protection claim is not to constitutionalize all tort law nor to transform every claim for improper provision of municipal services or for improper conduct of an investigation in connection with them into a federal case." *Id.*

The Defendants' argument that Johnson's equal protection claim cannot stand because he has not sufficiently identified similarly situated individuals who were treated differently is not consistent with the law in this circuit. In scenarios such as that present here, where a plaintiff alleges actions so egregious that they appear illegitimate on their face, specifying with particularity similarly situated comparators becomes unnecessary. *See, e.g., Swanson*, 719 F.3d at 784 (where plaintiff alleged that town mayor bore ill will against the plaintiff, caused an investigation against him, interrupted his meetings with building inspectors and angrily informed building inspectors not to cooperate with him, plaintiff did not need to present similarly situated individuals were treated more favorably); *Geinosky*, 675 F.3d at 748 (requiring the plaintiff to name a similarly situated person who did not receive 24 bogus parking tickets would not help

distinguish between ordinary wrongful acts and deliberately discriminatory denials of equal protection); *Hill v. City of Chicago*, No. 13 C 7487, 2014 WL 1978407, at *5 (N.D. Ill. May 14, 2014) (where plaintiff alleged that defendant police officers intimidated him, created false police reports, and pressured him to plead guilty and to refrain from filing an internal complaint, general allegation of being treated differently sufficed at the pleading stage); *Muczynski v. Lieblick*, No. 10 C 0081, 2012 WL 5470738, at *3 (N.D. Ill. Nov. 8, 2012) (general allegation that plaintiff was treated differently than others similarly situated was sufficient when alleged facts clearly demonstrate harassment by police officers that has no legitimate purpose).

Here, Johnson alleges that the Defendant Officers intentionally conducted his strip-search in a harassing manner with malignant animosity by (1) forcing him to strip in front of eight officers and five inmates; (2) slamming his head into his bed slab and jamming their knees into his shoulder blades; (3) threatening him with two Tasers aimed at his genitals and heart; and (4) slapping his buttocks at the conclusion of the search, all while hurling a slew of both racially and sexually demeaning insults. Johnson also claims that "at no time immediately prior to, during, or after the alleged incident did the Defendant Officers subject any other detainee to this similar conduct," *see* Dkt. 44 at ¶ 39, thereby alleging generally that he was arbitrarily singled out and that he was treated differently than similarly situated detainees. This general allegation, coupled with the alleged actions that so clearly suggest harassment by the Defendant Officers, is sufficient to state a class-of-one equal protection claim. *See, e.g., Geinosky*, 675 F.3d at 748; *Swanson*, 719 F.3d at 784 ("if animus is readily obvious, it seems redundant to require that the plaintiff show disparate treatment in a near exact, one-to-one comparison to another individual"); *Fenje v. Feld*, 398 F.3d 620, 628 (7th Cir. 2005) (official harassment directed against a plaintiff out of malignant animosity states a claim for relief under the Equal Protection Clause).

Johnson has properly pled the requisite elements. He asserts that the Defendant Officers intentionally treated him differently from other detainees similarly situated to him by detailing the fashion in which his strip-search was conducted and stating generally that other detainees were not subject to the same. The alleged facts clearly demonstrate harassment by police officers that has no legitimate purpose or rational relationship to any legitimate exercise of police discretion. Although there is no pattern of conduct like was found in *Geinosky*, the conduct alleged is sufficiently egregious such that specifically identifying a similarly situated person who did not undergo the same would not help "distinguish between ordinary wrongful acts and deliberately discriminatory denials of equal protection." *See Geinosky*, 675 F.3d at 748. Here, the nature of the Defendant Officers' alleged conduct does the work of demonstrating an improper discriminatory purpose. Accordingly, the motion is denied.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss Count II of the First Amended Complaint is denied.

```
_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois
```

Date: June 2, 2014